IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOMMIE S.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 8249 |
| v. ) | |
| ) | Magistrate Judge |
| KILOLO KIJAKAZI, Acting ) | Maria Valdez |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Tommie S.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 16] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On December 14, 2017, Plaintiff filed a claim for DIB, alleging disability since June 15, 2015. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 28, 2019. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On June 18, 2019, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had engaged in substantial gainful activity from June 15, 2015 through December 31, 2017,[3] but had not engaged in substantial gainful activity thereafter. The ALJ's remaining findings addressed the period during which Plaintiff did not engage in substantial gainful activity.

---

[3] Plaintiff has not challenged the ALJ's finding that Plaintiff engaged in substantial gainful activity during this time period.

2

At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease; lower extremity fracture; peripheral neuropathy; depression; and anxiety disorder. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal a Listing. Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can understand, remember, and carry out simple instructions, make simple work-related decisions, and tolerate occasional changes in a routine work setting; can have occasional interactions with supervisors and coworkers, but no interaction with the public.

At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as an office manager and manufacturing supervisor. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## **DISCUSSION**

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable

3

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.

2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v.*

5

*Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ's mental RFC finding did not account for Plaintiff's moderate limitations in concentration, persistence, and pace; (2) the ALJ's mental RFC finding did not account for Plaintiff's social restrictions; (3) the ALJ did not properly evaluate the medical opinions in arriving at Plaintiff's mental RFC;(4) the ALJ erred in finding that Plaintiff's mental impairments do not meet or medically equal

6

a listing; (5) the ALJ's step five determination is flawed because the VE's testimony was erroneous; and (6) the ALJ did not properly evaluate Plaintiff's subjective symptoms.

### A. Plaintiff's Concentration, Persistence, and Pace

Plaintiff contends that the ALJ's RFC determination did not properly account for his moderate limitations in concentration, persistence, and pace. As an initial matter, though the ALJ used the term "moderate" for Plaintiff's impairments in this area, the ALJ otherwise noted in her decision that Plaintiff's limitations were nonsevere. (R. 29 ("[C]laimant was working as a manager of a beauty supply store, suggesting an adequate ability to maintain concentration, persistence and pace."); *id.* at 34 ("Despite the claimant's allegations of cognitive difficulties, tests of concentration and memory showed no deficits."); *id.* at 35 ("[Plaintiff's] mental status exam showed minimal deficits. . . . His attention span was good."); *id.* at 37 ("The record does not support such extensive limitations. With intensive outpatient treatment, medication management, and therapy, the claimant's symptoms improved, as mental status exams showed minimal deficits in social functioning, as well [as] intact memory and concentration.").)

In any event, with respect to Plaintiff's mental RFC, the ALJ determined that Plaintiff can "understand, remember, and carry out simple instructions, make simple work-related decisions, and tolerate occasional changes in a routine work setting." (R. 29-30.) Plaintiff argues that the "catchall" terms such as "simple instructions" and "simple work-related decisions" do not adequately reflect his

7

moderate limitations and are legally fatal. Plaintiff is correct that courts have often criticized these types of boilerplate statements and have remanded matters back to the Commissioner when ALJs have used them. *See, e.g., Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019); *Moreno v. Berryhill*, 882 F.3d 722, 730 (2018). However, an ALJ's use of catchall phrases in an RFC, without more, does not necessitate remand. *See Recha v. Saul*, 843 F.App'x 1, 4 (7th Cir. 2021) (noting that the use of boilerplate language, by itself, is not reversible error).

Moderate limitations in concentration, persistence, and pace, like all limitations, must be accounted for in the RFC. *See Crump*, 932 F.3d at 570. But in framing the RFC, an ALJ is not required "to use certain words, or to refrain from using others, to describe the pace at which a claimant is able to work." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020); *see Recha*, 843 F.App'x at 4 ("[O]ur case law has clarified that an ALJ has some latitude with the exact wording of an RFC as long as it conveys in some way the restrictions necessary to address a claimant's limitations."). Furthermore, crucially, Plaintiff here has not articulated an RFC that would accommodate his asserted limitations in concentration, persistence, and pace and has not identified wording that the ALJ should have used. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("Although [the claimant] complains that the pace requirements are too vague, there is only so much specificity possible in crafting an RFC. The law required no more."). Given that hole in Plaintiff's argument, Plaintiff

8

has not shown that the RFC does not accommodate his concentration deficits. Therefore, the matter cannot be remanded on that basis.

### B. Plaintiff's Social Restrictions

The ALJ found that Plaintiff was moderately limited in interacting with others. Plaintiff vaguely challenges the ALJ's decision on that topic by pointing to evidence from the record indicating that Plaintiff had some difficulties with social functioning. The Court rejects Plaintiff's challenge. In her RFC finding, the ALJ specifically determined that Plaintiff could have only "occasional interactions with supervisors and coworkers" and "no interaction with the public." (R. 30.) As with concentration, persistence, and pace, Plaintiff does not explain why the ALJ's limitations in that regard do not properly account for any of his social restrictions. In limiting Plaintiff to occasional interactions with supervisors and coworkers and no interaction with the public, the ALJ adequately accounted for Plaintiff's moderate social limitations. *See Meghan S. v. Kijakazi*, No. 20 C 1592, 2021 U.S. Dist. LEXIS 172594, at *21 (N.D. Ill. Sep. 13, 2021) ("The ALJ accounted for Meghan's moderate social limitations by limiting her to occasional interaction with coworkers and supervisors and no interaction with the public.").

### C. Medical Opinions Regarding Plaintiff's Mental Functioning

Plaintiff argues that the ALJ did not properly assess the opinion of Dr. Gordon Schultz. As to Dr. Schultz's opinion, the ALJ stated as follows:

> The opinion by Dr. Gordon Schultz, Psy.D, at Exhibit 17F, is unpersuasive, as his treatment of the claimant was rather limited. Records indicate that the claimant engaged in weekly outpatient individual therapy with Dr. Schultz for only a month, from April 19,

9

> 2018, until May 17, 2018, when he began his intensive outpatient program. (24F/12). In addition, the opined limitations are not fully consistent with the record. It was opined that due to mental limitations, the claimant would be absent more than three times per month, he was markedly limited in nearly all work skills, he would be off-task 21% or more of the workday, and had extreme limitations in all areas of "paragraph B" mental functioning. The record does not support such extensive limitations. With intensive outpatient treatment, medication management, and therapy, the claimant's symptoms improved, as mental status exams showed minimal deficits in social functioning, as well [as] intact memory and concentration. There is no evidence supporting off-task limitations due to mental health symptoms.

(R. 37.)

The Court agrees with Defendant that the ALJ reasonably found Dr. Schultz's opinion to be inconsistent with Plaintiff's course of treatment and not supported by or consistent with the mental status examinations that showed minimal deficits. Dr. Schultz's opinion was extreme – he checked boxes for nearly every symptom listed on the form, checked the most restrictive options for absenteeism and off-task time, opined that Plaintiff was "markedly limited" in every single functional category listed save one, and endorsed "extreme" limitations (meaning "the inability to function") in every functional area. (*Id.* at 1030-32.) Other courts in this district have criticized similarly extreme opinions in other cases as "so inherently unbelievable" that "the court cannot take . . . [the] doctor's opinion seriously, let alone begin to question the ALJ's rejection of them." *Thelmarae W. v. Saul*, 476 F. Supp. 3d 717, 728-29 (N.D. Ill. 2020). Ultimately, the Court finds that

10

the ALJ provided an adequate explanation for her assessment of Dr. Schultz's opinion and the ALJ was justified in finding his extreme opinion unpersuasive.[4]

### D. The ALJ's Step Three Determination

Plaintiff argues that because the ALJ found him to be moderately limited in the four "paragraph B" criteria that "could support that listing 12.04 or 12.06 is equaled." (Pl.'s Memo at 9.) The Court rejects Plaintiff's argument that the ALJ's step-three determination was faulty. Dr. Gale Sargeant opined on September 18, 2018 that Plaintiff's "mental impairments do not meet/equal the listings." (R. 107.) Consistent with that opinion, the ALJ noted that "[t]he medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (*Id.* at 28.) Furthermore, the ALJ provided an in-depth analysis as to Plaintiff's functioning in the four functional areas and then concluded that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." (*Id.* at 29.) The ALJ's overall analysis in that regard was sufficient to support her conclusion of nonequivalence. *See Deloney v. Saul*, 840 F. App'x 1, 4 (7th Cir. 2020) ("[A]n ALJ need not articulate specific evidence supporting a finding that an

---

[4] Plaintiff also points to the statement of Dr. Joseph Beck that it was his "feeling that pt. would be completely restricted from work based on depression alone." (R. 1018.) However, Plaintiff concedes that "such opinions are not entitled to special significance." (Pl.'s Memo at 7.) Indeed, the ALJ was not obligated to accept Dr. Beck's opinion on Plaintiff's ability to work, as that is a question to be determined by the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (claimant's ability to work is question reserved, by regulation, for the Commissioner).

11

impairment does not medically equal a listed impairment; a simple statement of non-equivalence will suffice.") (citation omitted).

### E. The ALJ's Step Five Determination

As stated above, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. In reaching her conclusion, the ALJ relied on the VE's testimony that Plaintiff could perform jobs as an address clerk (62,000 jobs nationally), document preparer (46,000 jobs nationally), and accounts clerk (169,000 jobs nationally). Plaintiff argues that the ALJ's step five determination is flawed because she did not "investigate and resolve any apparent conflict between the VE's testimony and the DOT." (Pl.'s Memo at 9.) Along those lines, Plaintiff asserts that "[t]he 2017 Vocational Expert Handbook recognizes that there is an apparent conflict between a job that requires a reasoning level 3 and limitations to only 'simple' and 'repetitive tasks.'" (*Id.* at 10 (emphasis removed).) The Court rejects Plaintiff's argument.

As an initial matter, while it is true that the referenced handbook suggests a conflict exists with respect to level 3 reasoning and simple tasks, such internal guidance does not have the force of law. Moreover, courts have found that there is no conflict. *See Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) ("And at all events, even workers who are markedly limited in their ability to understand, remember, and follow detailed instructions might still be able to perform jobs requiring level 3 reasoning development.") (citation omitted); *Blanchard v. Saul*,

12

No. 19-cv-911, 2020 U.S. Dist. LEXIS 133311, at *12-13 (W.D. Wis. July 28, 2020) (rejecting claimant's argument predicated on Vocational Expert Handbook: "[P]laintiff points to nothing in the record to suggest that she would be unable to perform the job duties of document preparer, order clerk, or charge-account clerk, all three of which are unskilled and do not appear particularly complex. Because plaintiff has failed to show an apparent or actual conflict between the DOT and the VE's testimony, and because plaintiff failed to point to any evidence to show that she lacked the adequate mental skills to perform the jobs identified, the court concludes that the ALJ did not err.") (citations omitted).

Based on his handbook-based argument, Plaintiff asserts that only the address clerk[5] job remains viable and argues that the 62,000 positions that job represents are not significant enough. As an initial matter, because the Court has rejected Plaintiff's handbook-based argument, the three jobs identified by the VE are all at play and those jobs total 277,000, which is undoubtedly a significant number. Furthermore, in support of his argument that the number of existing jobs is insufficient, Plaintiff relies on the out-of-district decision in *Sally S. v. Berryhill*, No. 2:18-cv-460, 2019 U.S. Dist. LEXIS 125040 (N.D. Ind. July 23, 2019) in which the court found that 120,350 jobs did not constitute a significant number. However, the *Sally S.* case has been questioned in this district and the Court chooses not to follow it here. *See Marko L. v. Saul*, No. 16 C 9723, 2021 U.S. Dist. LEXIS 41205, at

---

[5] Plaintiff points to *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015) in which the Court commented that the address clerk job is perhaps antiquated. However, Plaintiff does not point to any language in *Alaura* or other legal authority stating that the address clerk job cannot be utilized by the VE and the ALJ.

13

\*18 (N.D. Ill. Mar. 5, 2021) ("Plaintiff cites only a non-precedential case from another district that found that 120,350 jobs was not significant. However, Seventh Circuit precedent casts doubt on the conclusion in that case.") (citations omitted). Ultimately, the Court concludes that the ALJ's step-five determination is not erroneous.

  **F.**  <u>**The ALJ's Evaluation of Plaintiff's Subjective Symptoms**</u>

Plaintiff points to his self-reported use of a cane and evidence from the record reflecting his change usage and argues that the ALJ did not properly account for his need for a cane. The Court finds Plaintiff's arguments in that regard unavailing. With respect to Plaintiff's use of a cane, the ALJ found no evidence to support use of a walker and sporadic evidence of cane usage. (R. 36.) With respect to Plaintiff's physical RFC generally, the ALJ determined that Plaintiff was very limited. Specifically, the ALJ found that Plaintiff could only "occasionally climb ramps and stairs; never climb ladders, rope, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl." (*Id.* at 29.) Plaintiff does not argue that his use of a cane would prevent him from performing the physical activities that the ALJ found he could occasionally perform. For instance, Plaintiff does not assert that he could *never* climb ramps or stairs while using his cane for assistance. Furthermore, Plaintiff does not specifically argue that his cane usage would prevent him from performing the jobs of address clerk, document preparer, or accounts clerk. Accordingly, the Court finds that Plaintiff has not demonstrated any error in the ALJ's treatment of Plaintiff's self-reported cane usage.

14

## **CONCLUSION**

For the foregoing reasons, the points of error raised by Plaintiff are not well-taken. Accordingly, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 16] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:** **November 10, 2021**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**